518

## General Refractories Co. v. Fireman's Fund Insurance Co.

C.P. of Philadelphia County, April Term 1998, no. 1499.

*John N. Ellison and Daniel J. Segal,* for plaintiff.
*Wilson M. Brown,* for defendant.

DiNUBILE, *J.,* November 10, 2000—The within appeal arises from this court's order of October 19, 2000,

which entered judgment in favor of the defendant, Fireman's Fund Insurance Company and against the plaintiff, General Refractories Company and Grefco Inc. (GRC). This judgment was entered as a result of rulings made on certain pretrial motions in limine construing the contract of insurance entered into between the parties. The court found no ambiguity in the insurance contract, thereby barring the plaintiff from introducing extraneous evidence regarding contract interpretation. This decision effectively eliminated any factual issues for a jury to decide. As a result of these rulings, the court found that defendant's total limit of liability under the policy was $5 million and that Fireman's Fund was not obligated to pay any legal and loss expenses. The plaintiff's appeal challenges these findings.

Plaintiff brought suit against its insurer, Fireman's Fund, to recover funds for the payment and defense of lawsuits arising from asbestos litigation. Specifically, plaintiff sued for breach of contract, breach of a fiduciary duty and bad faith. GRC produced asbestos containing refractories and is presently, and was in the past, the subject of numerous asbestos personal injury lawsuits brought in Philadelphia and throughout the country. In 1994, GRC disposed of all its operating assets. Currently, the business consists of defending and paying judgments and settling lawsuits. GRC also seeks money to satisfy these payments from the numerous insurance policies both underlying and excess which were in effect while GRC was in business. This suit arises from just such a quest. In this case, the policy in question is a second line excess liability insurance policy ef-

fective for a three-year period from October 1971 to October 1974, with a one-month extension to November 25, 1974.

Under breach of contract, plaintiff's theory of recovery was a failure to pay what GRC construed as the total policy limit of $15 million. Also under breach of contract, plaintiff sued for recovery of legal and loss expenses incurred in the defense and settlement of asbestos claims. In conjunction, plaintiff sought recovery for a breach of fiduciary duty and bad faith arising from the alleged contract breaches, pursuant to the Pennsylvania Bad Faith Statute applicable to insurance companies. See 42 Pa.C.S. §8371.

At pretrial hearings on October 17 and 18, 2000, the court ruled on numerous motions in limine and held that the contract was plain and unambiguous. The court determined that the policy had a total limit of $5 million. Consequently, the trial court denied plaintiff's offer of proof of extraneous evidence designed to prove that the policy limits were $5 million for each individual year with a total of $15 million. The parties stipulated that Fireman's Fund had paid or agreed to pay $5 million. The court further ruled that Fireman's Fund was obligated to pay legal and loss expenses only if it had granted consent to such costs. Since all parties agreed that no consent was in fact given, the ruling on this issue, as well as on the aggregate limit of the policy, precluded recovery as a matter of law. The fiduciary breach and bad faith claims were no longer a jury question as well, since they were predicated on plaintiff's assertion that Fireman's Fund was obligated to pay an additional $10

million plus expenses and unreasonably failed to do so. In light of these rulings, no jury trial was necessary. The court, however, could not properly grant a nonsuit without empaneling a jury and forcing the plaintiff to present evidence as to liability.[1] Therefore, a hearing was held on October 19, 2000 in which a final judgment was entered against the plaintiff making the matter ripe for appeal. Consequently, GRC filed this appeal challenging the court's interpretation of the excess insurance contract which precluded plaintiff from recovering more than the $5 million limit and legal/loss expenses as well.[2]

Prior to discussing the court's rationale, it must be noted that this case was previously assigned to the Hon. Mark I. Bernstein, as co-team leader of the 1998 Day Forward Program of the Philadelphia Court of Common Pleas. There were numerous pretrial motions filed and orders entered. At one time during the discovery pro-

---

1. See *Lewis v. United Hospitals Inc.,* 547 Pa. 626, 692 A.2d 1055 (1997) which holds that a compulsory nonsuit cannot be entered prior to plaintiff presenting evidence as to liability.

2. At the pretrial hearing, defendant raised the defense of exhaustion arguing that the plaintiff, in order to recover, must exhaust all underlying insurance in existence from 1968 to 1984 (the year GRC ceased insurance coverage). Defendant cited *J.H. France Refractories Co. v. Allstate Insurance Company,* 534 Pa. 29, 626 A.2d 502 (1993) and *Koppers Company Inc. v. Aetna Casualty & Surety Co.,* 98 F.3d 1440 (3d Cir. 1996) to support its position. Fireman's Fund also asserted that the plaintiff failed to file a proof of loss pursuant to paragraph 7 of this insurance contract. The trial court made certain rulings on these issues which did not preclude the plaintiff from recovery. But, in light of the judgment entered in defendant's favor on the insurance contract interpretation issue (as reflected in the order of 10/19/00) which is the subject matter of this appeal, these issues are rendered moot. See paragraph 5 of this order.

ceedings, Judge Bernstein held a hearing and ruled that a prior defense counsel, admitted pro hac vice, had violated certain discovery orders. Fines and sanctions were imposed. See Judge Bernstein's order opinion of April 22, 2000. The Hon. Flora Barth Wolf of the Philadelphia Court of Common Pleas, entered an order denying partial summary judgment on July 15, 1999 on the two key issues ruled upon by this court. This court submits that it did not violate the equal jurisdiction rule involving the interlocutory orders entered by Judges Bernstein and Wolf as argued by the plaintiff. Judge Bernstein's ruling, order and opinion dealt with discovery violations and had nothing to do with interpretation of the terms of the contract of insurance. Likewise, Judge Wolf's denial of partial summary judgment was in a different court setting and arose prior to the completion of discovery. Unlike partial summary judgment, this court's rulings occurred at a pretrial hearing on motions in limine. The motions in limine dealt with evidentiary findings involving contract interpretation and admissibility of evidence, which, out of necessity, had to be made prior to commencement of a jury trial.

The issue presented on appeal challenges this trial judge's interpretation of two of the provisions of the second line excess liability Fireman's Fund insurance policy issued to GRC, namely, (1) the total limit of liability imposed upon defendant is $5 million; and (2) defendant's duty to pay legal/loss expenses. The court ruled that the plain meaning of these provisions was clear and unambiguous and, therefore, required no introduction of extraneous evidence to interpret their meaning.

The rationale for this decision will be discussed ad seriatim.

## LIMIT OF LIABILITY

The appropriate provision of the policy applicable to this issue provides as follows:

"(2) The insured warrants, and it is a condition of this policy, that underlying insurance (applying as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance in an amount not less than $5,000,000 each occurrence is in full force and effect at the inception of this policy, and further that such underlying insurance shall be maintained in full force and effect during the period of this policy, except for reduction of aggregate limits solely as the result of payment of claims arising out of occurrences during the policy period.

"(3) The limit of the company's liability under the policy shall be as follows:

"$5,000,000 each occurrence

"$5,000,000 aggregate

"(4) Except as otherwise provided herein the insurance afforded by this policy shall follow the terms, conditions and definitions as stated in the policies of underlying insurance, *except for limits of liability,* any renewal agreement and any obligation to investigate or defend." (emphasis added)

It is undisputed that during the term of this policy (effective from 10/71 to 10/74 and an additional month to 11/25/74) there existed a prime coverage from Ameri-

can Mutual Liability Insurance Company, as well as a first-level umbrella liability policy from Insurance Company of North America (INA). It is undisputed that paragraph 4 of the defendant's policy refers to the INA umbrella policy as underlying insurance. It is undisputed that this INA umbrella policy provided for $5 million limits of liability for any one or all occurrences for *each year* that the policy was in effect; namely from October 25, 1971 to October 25, 1974. The policy language specifically states: "INA's limit of liability ($5 million) arising out of one occurrence . . . (or) all occurrences . . . during *each policy year.*" Unlike the INA umbrella policy, the Fireman's Fund policy contained *no such language* indicating that the limits of liability were $5 million for each of the three years the policy was in effect. It is hornbook law that when a contract is clear and unambiguous on its face, extrinsic evidence is inadmissible to change its terms. A contract is not ambiguous if the court can determine its meaning on its face. A contract is not rendered ambiguous by the mere fact that the parties cannot agree on its construction. *Metzger v. Clifford Realty Co.,* 327 Pa. Super. 377, 476 A.2d 1 (1984). Silence as to a specific contingency does not render the contract ambiguous. *Seven Springs Farm Inc. v. Croker,* 748 A.2d 740 (Pa. Super. 2000).

The plain meaning of this policy is clear. It states that the policy limit in total is $5 million and not, as plaintiff asserts, $5 million for each year. Plaintiff argues that there exists an ambiguity which requires this court to accept certain extrinsic evidence so that a jury should decide the limits of the coverage. Plaintiff maintains that be-

cause the term of the Fireman's Fund policy was for three years, the "limit of liability" clause contained in paragraph 3 is unclear, especially when read in conjunction with paragraph 4. Paragraph 4 provides that the insurance afforded by the Fireman's Fund policy is governed by the terms, conditions and definitions of the underlying insurance (the INA umbrella policy), except as to limits of liability. Since the INA policy provides for $5 million for each year the policy is in effect, the plaintiff asserts the same wording should apply to the Fireman's Fund policy as well. Or, at the very least, an ambiguity exists and, therefore, the court should allow extrinsic evidence which suggests that some of the defendant's employees considered the aggregate sum of liability to be $15 million. This court most respectfully disagrees. Since the policy on its face is clear, extrinsic evidence as to interpretation is inadmissible. The plaintiff's interpretation would result in adding a provision which simply does not exist. GRC wishes to add a phrase in paragraph 3 so it reads, "$5,000,000 each occurrence . . . $5,000,000 aggregate, *for each policy year.*" This terminology simply is not contained in the Fireman's Fund insurance contract. In addition, paragraph 4 of the Fireman's Fund policy specifically excludes "limitations of liability" in looking to the terms, conditions and definitions of the underlying INA insurance policy. Paragraph 4 is clear that the provisions of the INA umbrella policy apply "except for limits of liability." The "limits of liability" in paragraph 3 unequivocally states a total of $5 million, not $5 million each year. Plaintiff wants the court to interpret the "except for limits of liability" clause to apply

only to the $5 million limit and not to the three-year term of the contract. This interpretation would be strained at best. Paragraph 3 of the Fireman's Fund policy clearly refers to "limit of the company's liability," as $5 million. Paragraph 4 provides that one must look to paragraph 3 to define the limits of liability contained in the policy, not the provisions of the INA umbrella policy. Consequently, this court found no ambiguity and precluded all extrinsic evidence which might indicate the contrary.

Plaintiff, at the pretrial hearing, in order to convince the court to hold otherwise, made what is termed a "boot strap argument." Counsel argued that since one or more of the defendant's employees construed the limit to be $15 million, this court should follow their interpretation, or at the very least, permit evidence at trial so that the jury could decide this issue. If the policy is clear and unambiguous, there is no reason to allow evidence at trial for one side to dispute and the other to affirm. To do so would violate the essence of the no ambiguity rule designed to uphold the sanctity of the written contract. To violate this rule of law would mean that no written contract would ever be safe from attack.

## OBLIGATION TO PAY LOSS
## EXPENSES/LEGAL EXPENSES

The plaintiff also argued that the court incorrectly ruled that Fireman's Fund was under no obligation under the policy to pay legal/loss expenses. Paragraph 8(a) of the policy of insurance provided as follows:

"8(a). Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred

by the insured *with the consent of the company* in the adjustment or defense of claims, suits or proceedings shall be borne by the company and the insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the insured's employees incurred in investigation, adjustment and litigation." (emphasis added)

Plaintiff asserts that the defendants cannot withhold consent unless it is reasonable. Once again, the plaintiff argues that this court should rewrite the contract by inserting the word "reasonable" prior to consent. See *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982) (holding that it is not the function of the court to rewrite the content or give a construction in conflict with the accepted and plain meaning of the language used). The plain meaning is clear. The defendant must give consent. Since it was undisputed that no consent was given, there existed no obligation to pay. Consequently, the court, in paragraph 2(b) of the final judgment order precluded recovery. It must be borne in mind when construing this provision that the policy is an excess liability contract. There is no obligation on defendant's part to assume responsibility for the defense of any claims. Thus, the provision requiring defendant to assume a certain proportional share of the legal/loss expenses (including court costs and interest) naturally would be left to the option of the excess carrier. The plaintiff argues that this provision is illogical and makes no sense to be construed in such a fashion as to vest in the insurance company the unilateral right to consent to the expenditure of defense

costs. On the contrary, this provision makes perfect sense. As an excess carrier, it is logical to have the right to elect whether or not to proceed and involve itself in the investigation and payment of defense costs, etc. In not electing to do so, it takes its chances as to whether or not it will become liable on the excess policy without its intervention. On the other hand, if the company believes that it may become liable on the policy, then it reserves the option to determine whether or not to assume some of the costs to prevent possible liability. See *Stonewall Insurance Co. v. Asbestos Claims Management*, 73 F.3d 1178, 1218-19 (2d Cir. 1995) (holding that after construing the provisions of various liability policies pertaining to asbestos claims, the court found there was no obligation to pay defense expenses and/or costs and legal fees by the excess insurance carriers where the policy provided, "incurred jointly by mutual consent").

The plaintiff relies heavily on *North River Insurance Co. v. Cigna Reinsurance Co.,* 52 F.3d 1194 (3d Cir. 1995) to support its contention that the consent to costs clause is ambiguous and that extrinsic evidence must be introduced to establish that consent could not unreasonably be withheld. As stated in the defendant's brief, this case is not controlling. It involved an affirmance of an arbitrator's decision applying Ohio law. The arbitrator found that the excess carrier was obligated to pay defense costs after permitting the introduction of extrinsic evidence of industry custom. The policy in question, however, contained ambiguities not present here. As Judge Scirica pointed out in his opinion, "the arbitrator's interpretation gives reasonable effect to the various parts. For example, although at paragraph one of the policy, North-River (the excess carrier) agreed to indemnify

Owens-Corning (the insured) against 'ultimate net loss,' which was defined to exclude 'costs,' paragraph eleven referred to North-River's obligation to pay both ultimate net loss and costs." *Id.* at 1208. Since the contract here is unambiguous, this case is not applicable.

Finally, plaintiff argues that the last sentence of paragraph 8(a) would be a nullity if Fireman's Fund had a unilateral right to consent. The sentence states:

"Loss expenses hereunder shall not include salaries and expense of the insured's employees incurred in investigation, adjustments and litigation."

This sentence merely delineates and defines what expenses would not be included (*i.e.,* employees' salaries, etc.) in the event that the insurer did in fact consent to the expenditure of costs, etc. it in no way nullifies nor derogates the consent provision contained in the policy. In conclusion, the policy is clear and unambiguous and does not require the introduction of extrinsic evidence to construe it. Therefore, the entry of judgment in favor of defendant was proper.

## FINAL JUDGMENT ORDER

And now, October 19, 2000, the court enters the following final judgment order.

(1) Defendant, Fireman's Fund Insurance Company, filed motions in limine to exclude evidence regarding the meaning of the controlling policy language contained in the liability policy in question.

(2) In the context of ruling on those motions, and for the reasons expressed in open court, this court made the following legal rulings:

(a) The FFIC insurance policy at issue in this action unambiguously provides for only one limit of liability of $5 million, which is not an annual limit and which does not apply separately to each of the three years of that policy;

(b) The FFIC insurance policy at issue in this action unambiguously provides that FFIC need only pay legal and loss expenses if it consents to plaintiff's, General Refractories Company's, incurring of those expenses; that FFIC has no obligation to consent; and that there is no "reasonableness" restriction upon the consent language in section 8(a) of the policy. The parties do not dispute that FFIC has not granted consent.

(3) The parties agree that FFIC has already paid or agreed to pay $5 million under the FFIC insurance policy at issue in this action.

(4) In light of the above and based on the record of the hearing held in open court on October 17 and 18, 2000, GRC has no claim upon which relief may be granted under its breach of contract claim, its bad faith claim, or its breach of fiduciary duty claim.

(5) FFIC has raised the issues of exhaustion of the underlining policies as well as proof of loss; maintaining that plaintiff will be unable to prove either at trial. Both of these issues are rendered moot by virtue of this court's rulings on heretofore mentioned pretrial motions in limine.

Judgment is hereby awarded, and directed to be entered, in favor of defendant, FFIC, as a matter of law on all counts of GRC's amended complaint.